## THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**PROJECT NEPTUNE, LLC**<br><br>    **Debtor.** | **Bankruptcy Case 23-23695**<br>**(Chapter 11 – Subchapter V)**<br><br>**Judge Peggy Hunt** |

## OBJECTION TO DEBTOR'S MOTION TO DISMISS

COMES NOW Creditor, Adrian "Chip" Garritty, and respectfully files this objection to the Debtor's motion to dismiss filed October 24, 2023, which is scheduled to be heard on November 8, 2023, and states:

### PARTIES

1.    Adrian "Chip" Garritty ("Garritty") is a citizen of Arkansas, and resident of Benton County, Arkansas.

2.    As described in the motion, Garritty is one of thousands of Debtor's former customers from his purchase of three tickets for the failed Glenn Beck Cruise for himself and his family, totaling $25,615.00.

3.    After the pandemic, Garritty and other would-be passengers were repeatedly misled by the Debtor about their money, possible refunds, possible credits, and even how airlines and Costa Cruise Lines, Inc. ("Costa") had kept their funds and had refused refunds.

4.      On October 27, 2023, I filed a class action lawsuit for other similarly situated purchasers of the Glenn Beck Cruise, and it appears the Class have all been identified by the Debtor as creditors in this proceeding.  A copy of the Class Action Complaint is provided as Exhibit A and is fully incorporated herein by reference.

5.      I have received notice of the Debtor's motion to dismiss and the hearing on the motion set for November 8, 2023.

6.      I object to dismissal of these proceedings without some protection for myself and other similarly situated Glenn Beck Cruise passengers from the Debtor.

7.      For years now, the Debtor has mismanaged its business, and moreover, in attempts to cover its poor financial condition, which it created, the Debtor has misled me and its other customers for several years.

8.      I have no confidence that the Debtor will appropriately manage these credits now, and over this month, as it has developed a pattern of mismanagement and deception since the 2020 pandemic.

9.      Although the Debtor identifies $1,523,995.90 in credits from Costa Cruise Lines as its asset, those credits belong to the Class members and me as the Class Representative.

10.     I cannot be present for the hearing on this motion because of the Court's distance from my home, and because it would not be economically wise for me to do so.

WHEREFORE, I pray for the Court to consider this Objection carefully and enter an Order denying the Debtor's motion to dismiss in its entirety.

/s/ Adrian "Chip" Garritty

Adrian "Chip" Garritty
3312 S. White Oak St.
Siloam Springs, AR 72761

# EXHIBIT     A

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2023-Oct-27  11:18:36
04CV-23-2996
C19WD06 : 17 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

| | |
|---|---|
| **ADRIAN "CHIP" GARRITTY, on behalf of himself and others similarly situated** | |
| Plaintiff, | |
| v. | |
| **BLAZE MEDIA, L.L.C.,** **GLENN BECK, INDIVIDUALLY,** **BILL O'REILLY, INDIVIDUALLY,** **BILL O'REILLY PRODUCTIONS, INC.,** **CARNIVAL CORPORATION,** **COSTA CRUISE LINES, INC.** | Case No.: _____ <br><br> **CLASS ACTION** |
| Defendants. | |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Adrian "Chip" Garritty, on behalf of himself and all others similarly situated ("Plaintiffs" or "Plaintiff and the Class"), and for their Class Action Complaint against Defendants hereby state and allege:

### PARTIES

1.     Plaintiff Adrian "Chip" Garritty ("Garritty" or "Plaintiff") is a citizen of Arkansas, and resident of Benton County, Arkansas.

2.      Upon information and belief, Defendant Glenn Beck ("Beck") is a citizen of Texas, and may be found at 2224 King Fisher Dr., Westlake, TX 76262. Beck has minimum contacts within the State of Arkansas as he derives significant revenue from Plaintiff, other Arkansas citizens, and other revenue from within the State of Arkansas.

3.      Blaze Media, LLC ("Blaze"), is a limited liability corporation with its principal place of business in Texas, and having a registered agent known as Legalinc Corporate Services, Inc., 10601 Clarence Dr., Suite 250, Frisco, TX 75033. Blaze has minimum contacts within the State of Arkansas as it derives significant revenue from Plaintiff, other Arkansas citizens, and other revenue from within the State of Arkansas.

4.      Upon information and belief, Defendant Bill O'Reilly ("O'Reilly") is a citizen of New York. O'Reilly has minimum contacts within the State of Arkansas as he derives significant revenue from Plaintiff, other Arkansas citizens, and other revenue from within the State of Arkansas.

5.      Bill O'Reilly Productions, Inc., ("BOP") is a citizen of New York, with a registered agent at 380 Lexington Ave., 31st Floor, New York, NY 10168. BOP has minimum contacts within the State of Arkansas as it derives significant revenue from Plaintiff, other Arkansas citizens, and other revenue from within the State of Arkansas.

6.      Defendant Carnival Corporation ("Carnival") is a citizen of Florida. Its registered agent for service of process is NRAI Services, Inc., 1200 South Pine Island Rd., Plantation, FL 33324. Upon information and belief, Carnival Corporation is the parent entity of Defendant Costa Cruise Lines, Inc. Carnival has minimum contacts within the

State of Arkansas as it derives significant revenue from Plaintiff, other Arkansas citizens, and other revenue from within the State of Arkansas.

7.      Defendant Costa Cruise Lines Inc. ("Costa") is a citizen of Florida. Its registered agent for service of process is CT Corporation, 880 SW 145th Ave., Suite 201, Pembroke Pines, FL 33027. Costa has minimum contacts within the State of Arkansas as it derives significant revenue from Plaintiff, other Arkansas citizens, and other revenue from within the State of Arkansas.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the civil claims brought on behalf of Plaintiff and the Class, and jurisdiction over the Defendants due to their minimum contacts within Arkansas.

9.      This Court is the proper venue as Plaintiff is a resident of this County and many of the actions complained of occurred within this County.

## FACTS

10.     Beginning in 2019, Defendant Glenn Beck partnered with the now defunct CruiseBuilder[1] to promote the "Glenn Beck Cruise Through History" (hereinafter "Cruise"). The Cruise was billed as a 14-day, family friendly trip through several historic locations where passengers would receive political and religious commentary from influencers such as Glenn Beck, Bill O'Reilly, David Barton, and Rabbi Lapin (collectively, the "Cruise Promoters").

---

[1] CruiseBuilder is a subsidiary of Project Neptune, L.L.C., which filed a Bankruptcy Petition in Utah on August 25, 2023.

11.     Plaintiff Garritty purchased three tickets for the Cruise for himself and his family, totaling $25,615.00. Plaintiff Garritty purchased these tickets after hearing the advertisements of Defendant Glenn Beck, of whom Plaintiff Garritty has been a fan for many years.

12.     The Cruise was a charter, meaning the entire ship was purchased for Plaintiff and members of the Class by the now defunct CruiseBuilder and the Cruise Promoters, which marketed the Cruise in a purposeful way to assure ticket purchasers that everybody on board the ship was a like-minded fan of Glenn Beck.

13.     Defendants Costa Cruises, Inc., and Carnival Corporation sold this charter to Defendant Glenn Beck and the now defunct CruiseBuilder.

14.     The Cruise was scheduled to depart on March 24, 2020, stopping at ports in Italy, Croatia, Israel, and Greece, before returning on April 7, 2020. Defendant Glenn Beck focused on the religious and political nature of the locations and advertised the Cruise as an "opportunity to reinforce your faith, culture and values by experiencing it in the places where it first took root, Jerusalem, Athens, or Venice."

15.     When the Cruise was to stop in Israel, passengers were given excursion options based on their individual religious beliefs.

16.     Basic cabins on the Cruise started at $4,999 per person and went as high as $9,395 per person for the so-called "Grand Suite." Additionally, passengers were given the option to purchase the "Inner Circle" package, which provided guests with opportunities to attend exclusive meet and greet events with Glenn Beck, along with

admission to exclusive Beck events onboard the Cruise. The "Inner Circle" package cost each guest an additional $4,999. **Exhibit A**.

17.    Inner Circle purchasers were also given the opportunity to attend an Inner Circle dinner with Glenn Beck, including a black-tie event where each guest would have their picture taken with Beck.

18.    Beck advertised his Cruise on his network known as Blaze or Blaze Media, and on corresponding podcasts and YouTube videos. The first video Glenn Beck made and posted on the CruiseBuilder YouTube account, warned potential ticket purchasers:

> "Right now, our foundations of our faith, our freedom, our human progress are all under attack. I want to give you the opportunity to share your values, your beliefs, and the things you hold dear with the ones you love. Yes, you could go to Disney and spend a buttload of money and stand in line the entire time with screaming kids, or you could have our first ever Cruise Through History. You're invited."

19.    Beck told potential purchasers they would "walk where Jesus walked," and would be "guided every step of the way by himself and others."[2]

20.    CruiseBuilder created the "Cruise Through History Podcast" which featured Glenn Beck. Episodes of the podcast focused on topics such as "faith and freedom," along with episodes devoted to the religious and political history of each port at which the ship would stop and allow passengers to listen to Glenn Beck's history lessons on that particular area.

21.    CruiseBuilder also created "Vacation Radio" which was a station devoted to advertising the various travel offerings, including the Cruise. In one episode,

---

[2] As of October 13, 2023, Glenn Beck's first promotional video can still be found at: https://www.youtube.com/watch?v=sGr0lg6vbCo.

CruiseBuilder executive Brian Mickelson stated that CruiseBuilder "rented out the entire ship for Glenn Beck." Mickelson said "it's not the cruise ship's cruise anymore, it's Glenn Beck's cruise now. Glenn is setting all the themes, and all the ideas, and everything that's going to happen on the ship are all generated by Glenn and our group, so it's very specific and tailored to what our guests want to experience on the trip."[3]

22.     Mr. Mickelson is a former charter airline executive, and on or around 2015, the Department of Transportation ordered Mr. Mickelson to stay out of the charter airline business due to his failure to refund passengers when he cancelled their flights. **Exhibit B**.

23.     Glenn Beck was the primary advertiser for the Cruise, was the decision-maker when it came to passengers' experience on the cruise and the deciding factor in Plaintiff and Class Members' decisions to purchase tickets on the Cruise. Beck advertised the Cruise on his network, also known as "The Blaze," and through that platform enticed Plaintiff and Class members to purchase tickets on his Cruise. Beck also used his channel to advertise his "Inner Circle" package for an additional $4,999.

24.     In early February of 2020, COVID-19 began making its way through Europe and the Middle East, causing travel to be restricted. Wes Cobos, President of CruiseBuilder, informed passengers that CruiseBuilder had a "team in Italy doing a full evaluation of the situation, including gathering first-hand reports on where the safe zones

---

[3] Vacation Radio, "Cruising Italy, Croatia, Greece, Israel…with Glenn Beck!" August 7, 2020.

are, what safety precautions are being implemented and how those precautions are actually being carried out." **Exhibit C**.

25.     On February 23, 2020, CruiseBuilder notified all ticket purchasers that the trip was postponed and would have to be rescheduled due to the pandemic. **Exhibit D**.

26.     At this point, Defendants wrongfully altered the terms and conditions of the Cruise issued to Plaintiff and the Class to ensure no refunds would be issued. The original terms and conditions stated: "If a vacation is canceled prior to departure, CruiseBuilder's only responsibility will be to refund the amount received for the reservation." **Exhibit E**.

27.     The new altered version of the terms and conditions unilaterally and wrongfully favored Defendants, stating: "If a vacation is cancelled by CruiseBuilder prior to departure, CruiseBuilder's only responsibility will be to refund any unused funds from the reservation payments and any amounts refunded back from other travel vendors." **Exhibit F**.

28.     Defendants were careful to use the word "postponed" instead of "cancelled" during this period. Defendants were aware that all travel insurance policies sold through Travel Guard, a subsidiary of AIG, would only pay out if the Cruise was officially cancelled and not merely postponed.

29.     Class members soon began requesting refunds from Defendants. Emboldened by the new protections Defendants wrongfully afforded themselves in their altered terms and conditions, Defendants stated: "At the time the trip was originally set to go we had already paid all the vendors including the cruise line, hotels, transfers, bus

companies, tour companies, etc. We did not get refunded from most of those vendors. They did move it to different dates. When the last one was unable to go, they offered credits and not a refund. We are only able to provide the refund options that were sent out previously." **Exhibit G**.

30.     The refund options offered by CruiseBuilder were credits toward a different cruise; one that would not include flights, hotels, Glenn Beck, or even the same ports as the original Glenn Beck Cruise Through History.

31.     CruiseBuilder's contention that vendors did not issue it refunds was a misrepresentation. Several vendors, including Lufthansa Airlines, did issue refunds to CruiseBuilder. **Exhibit H**.

32.     CruiseBuilder also received $435,500 in Paycheck Protection Program loans, which were ultimately forgiven. **Exhibit I**.

33.     By February 23, 2023, exactly two years after the initial postponement, CruiseBuilder then cancelled the replacement trips offered in place of a refund, stating: "CruiseBuilder has faced significant financial pressure due to inflation and related costs for travel services. These inflationary market conditions, which are in addition to lingering impacts of COVID-related restrictions, have made it impossible for CruiseBuilder to go forward with your scheduled cruise. Unfortunately, given these circumstances, CruiseBuilder has no choice but to cancel your trip." **Exhibit J**.

34.     This cancellation, two years after the initial postponement, ensured that no purchasers of Travel Guard insurance would receive the benefit of the insurance they purchased. This cancellation was also the end of any hope ticket purchasers had of

obtaining a replacement cruise, or any value for the extraordinary amounts they paid to Defendants.

35.     Beck issued a statement to Buzzfeed News, saying: "My position is that anyone who wants a refund in these uncertain times should receive one, and I've strongly encouraged the cruise line, airlines, and the hotels to accommodate. I look forward to going on the Cruise Through History when the circumstances surrounding this global pandemic allow us to do so." **Exhibit K**.

36.     Despite the public statement, Glenn Beck absolved himself of any responsibility to his fans, who bought tickets for his Cruise based on his advertisements. Glenn Beck sold every single one of his Inner Circle tickets for $4,999 a piece. **Exhibit L**. The Inner Circle tickets alone provided Beck with $679,864 which he never returned.

37.     On August 25, 2023, Project Neptune LLC filed a Voluntary Petition for Chapter 11 bankruptcy.

38.     To date, Glenn Beck and the other Defendants have retained all funds paid to them for the Cruise.

## CLASS ALLEGATIONS

39.     Plaintiff and the Class incorporate the above paragraphs herein.

40.     Plaintiff brings this action pursuant to Arkansas Rule of Civil Procedure ("ARCP") 23, on behalf of himself and the following "Class:"

All persons who purchased tickets for the Glenn Beck Cruise Through History scheduled for March 24, 2020 to April 7, 2020. Including those who purchased "Insider Package" tickets, "VIP Package" tickets, and "Inner Circle Package" tickets.

Excluded from the Class are the following:

    a) Any class member that received a full refund for their reservation

    b) Any of the named Defendants, their directors, officers, employees, and/or agents

    c) The judge presiding over this action and his/her immediate family members; and,

    d) Any person that timely and properly excludes himself/herself/itself pursuant to the orders of the court.

## A.    Typicality

41.    Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased tickets and packages for the Cruise, and the claims all arise from the same wrongdoing committed by Defendants.

## B.    Commonality

42.    There are questions of law and/or fact common to the Plaintiff and the Class, which predominate over questions that may affect individual Class members. The common and predominate question is whether Defendants were unjustly enriched by promoting and selling the tickets for the Cruise, accepting Class members money for the Cruise, then cancelling the Cruise and keeping their ill-gotten proceeds.

## C.    Numerosity

43.    The Arkansas Supreme Court has certified a class with as few as 77 people, and separately noted a class with as few as 40 members may be proper due to the inherent difficulty in joining this number of individual actions.

44.    Tickets and packages were sold to individuals in all states where Defendants advertised the Cruise. Upon information and belief, approximately 2,000 tickets were sold for the Cruise.

45.    Thus, the members of the Class are so numerous that joinder of all members is impracticable.

## D.    Superiority

46.    A class action is superior to other methods for the fair and efficient adjudication of this controversy because the prosecution of separate actions by individual members of the Class creates a risk of inconsistent and varying results. Further, this would also establish incompatible standards of conduct for Defendants.

47.    Additionally, questions of law and fact common to the members of the Class predominate over questions affecting only individual members. Adjudication as a class in this case eliminates the possibility of duplicative litigation.

## E.    Adequacy

48.    Plaintiff will fairly and adequately represent the interests of the Class because Plaintiff's interests do not conflict with the interests of the other Class members he seeks to represent. Plaintiff has also retained competent counsel who is experienced in

class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the class.

## COUNT I

### FRAUD

49.     Plaintiff and the Class incorporate the above paragraphs herein.

50.     Defendants misrepresented to Plaintiff and the Class that they wanted refunds to be issued in compliance with the original terms and conditions created and issued by CruiseBuilder. Beck further stated that refunds should be given to any ticket purchaser who wanted one.

51.     Defendants publicly represented to Plaintiff and the Class that they were advocates for Plaintiff and the Class and were working to ensure that refunds would be issued.

52.     These were material misrepresentations of fact.

53.     Defendants had knowledge that their representations were false or that there was insufficient evidence upon which to make the representations.

54.     While Defendants made these public material misrepresentations, they privately sought to insulate themselves from the financial loss that would come from issuing refunds.

55.     Plaintiff and the Class justifiably relied on Defendants misrepresentations and were discouraged from taking further action due to Glenn Beck's statements that he was working to make sure his fans received refunds.

56.     Vendors paid by CruiseBuilder and Beck did refund monies to Defendants. However, these monies were not refunded to Plaintiff and the Class.

57.     Upon information and belief, Glenn Beck retained funds paid by Inner Circle purchasers, despite his public charade calling for refunds to passengers who requested them.

## COUNT II

## IN THE ALTERNATIVE

## CONSTRUCTIVE FRAUD

58.     Plaintiff and the Class incorporate the above paragraphs herein.

59.     Defendants materially misrepresented to Plaintiff and the Class that, among other things, Defendants intended for refunds to be issued.

60.     Defendants asserted these representations to be true without knowledge of their falsity and without moral guilt or evil intent.

61.     Because of Defendants' material misrepresentations, Plaintiff and the Class believed that a refund would be issued.

62.     Plaintiff and the Class are entitled to recover damages caused by acts committed, or the forbearance of action, pursuant to the material misrepresentations made by Defendants.

## COUNT III

## NEGLIGENCE

63.     Plaintiff and the Class incorporate the above paragraphs herein.

64.     Defendants had a duty to inform Plaintiff and the Class of the situation regarding the status of the Cruise and any subsequent refunds.

65.     Defendants failed to relay accurate information to Plaintiff and the Class that they would not receive refunds and should pursue all other available means of resolution.

66.     As a proximate cause of these fraudulent representations, Plaintiff and the Class continued to attempt to schedule replacement cruises that were also cancelled.

67.     Further, Defendant Glenn Beck failed to issue refunds to his fans who spent an additional $4,999 for his Inner Circle package, despite his public statement that refunds should be issued.

68.     Plaintiff and the Class have sustained damages as a proximate cause of the acts of Defendants and should be awarded damages over and against Defendants, including attorney's fees and costs.

## COUNT IV

## UNJUST ENRICHMENT

69.     Plaintiff and the Class incorporate the above paragraphs herein.

70.     Defendants were paid by Plaintiff and the Class upon the promise that the Glenn Beck Cruise Through History would occur as advertised.

71.     The Cruise did not occur as advertised, and further, cruises offered as a replacement were subsequently cancelled as well.

72.     Defendants have received payments from Plaintiff and the Class to which they are not entitled.

73.     It would be unjust for Defendants to retain monies paid by Plaintiff and the Class.

74.     Plaintiff and the Class respectfully ask this Court to order Defendants to disgorge all payments received from Plaintiff and the Class.

## COUNT V

## CONSTRUCTIVE TRUST

75.     Plaintiff and the Class incorporate the above paragraphs herein.

76.     A constructive trust may be imposed when a person holds the property of another and would be unjustly enriched if allowed to retain that property.

77.     "The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of fiduciary duty, or wrongful disposition of another's property." *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842, 849 (2005). Regardless of whether any specific fact is unintentionally misrepresented, Defendants are subject to an equitable duty to return Plaintiff's money and are unjustly enriched if permitted to retain that money.

78.     Defendants are wrongfully in possession of monies paid by Plaintiff and the Class. Defendants have an equitable duty to return this money to Plaintiff and the Class.

79.     Defendants would be unjustly enriched if they were permitted to continue to possess monies paid by Plaintiff and the Class.

80.     Equity demands a constructive trust containing all monies paid to Defendants by Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray that the Court enters judgment in their favor on all the claims asserted herein, to Order all the requested relief pled above, and to provide Plaintiff and the Class all other just and appropriate relief including attorney's fees and costs.

Dated: October 27, 2023                    Respectfully submitted,

**POYNTER LAW GROUP, PLLC**

_____
Scott Poynter, AR Bar. 09077
scott@poynterlawgroup.com
Daniel Holland, AR Bar. 2019237
daniel@poynterlawgroup.com

Clay Ellis, AR Bar. 2023183
clay@poynterlawgroup.com
407 President Clinton Ave., Suite 201
Little Rock, AR 72201
(501) 812-3943